## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## SOUTHERN DIVISION
## at PIKEVILLE

**Civil Action No. 08-40-HRW**

**BETTY MITCHELL,**                                          **PLAINTIFF,**

v.                          **MEMORANDUM OPINION AND ORDER**

**MICHAEL J. ASTRUE**
**COMMISSIONER OF SOCIAL SECURITY,**            **DEFENDANT.**

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying Plaintiff's application for disability insurance benefits.

The Court having reviewed the record in this case and the dispositive motions filed by the parties, and being otherwise sufficiently advised, for the reasons set forth herein, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed her current application for disability insurance benefits on June 4, 2001, alleging disability beginning on March 12, 2001, due to bulging discs in lower back and degenerative disc disease (Tr. 174).

This application was denied initially and on reconsideration.

On February 24, 2006, an administrative hearing was conducted by Administrative Law Judge Ronald Kayser (hereinafter "ALJ"), wherein Plaintiff, accompanied by counsel, testified.  At the hearing, Dr. Ralph Crystal, a vocational expert (hereinafter "VE"), also testified.

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

Step 1:  If the claimant is performing substantial gainful work, he is not disabled.

Step 2:  If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).

Step 3:  If the claimant is not performing substantial gainful work and has a severe  impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.

Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.

Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

2

On May 5, 2006, the ALJ issued his decision finding that Plaintiff was not disabled (Tr. 27-38).

Plaintiff was 55 years old at the time of the hearing decision.  She has at least a high school education and her past relevant work consist of work as a bus driver, cashier and cook.

At Step 1 of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since  the alleged onset date of disability (Tr. 29).

The ALJ then determined, at Step 2, that Plaintiff suffered from morbid obesity, mild degenerative changes at L4-5 and L5-S1 and depression, which he found to be "severe" within the meaning of the Regulations (Tr. 29).

At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments (Tr. 30).  In doing so, the ALJ specifically considered listings 1.00, 1.02, 1.04 and 12.00 (Tr. 30-35).

The ALJ further found that Plaintiff could not return to her past relevant work (Tr. 36) but determined that she  has the  residual functional capacity ("RFC") to perform a range of medium work with certain physical and mental limitations as set forth in the hearing decision (Tr. 35-36).

3

The ALJ finally concluded that these jobs exist in significant numbers in the national and regional economies, as identified by the VE (Tr. 26). Accordingly, the ALJ found Plaintiff not to be disabled at Step 5 of the sequential evaluation process.

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner on February 7, 2008 (Tr. 17-21).

Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment [Docket Nos. 11 and 12] and this matter is ripe for decision.

### III. ANALYSIS

#### A.    Standard of Review

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health*

4

*and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

### B.    Plaintiff's Contentions on Appeal

Plaintiff contends that the ALJ's finding of no disability is erroneous because: (1) the ALJ erroneously determined that she did not satisfy the criteria for Listing 1.04 and (2) the ALJ improperly evaluated her mental impairment.

### C.    Analysis of Contentions on Appeal

On appeal, Lawson insists that her back condition meets the requirements for listed disabilities under 20 C.F.R. Part 404, Subpart P, Appendix 1, Listings, 1.04A, B, and C. Listing 1.04 refers generally to **disorders of the spine**. Listing 1.04A refers to evidence of **nerve root compression** characterized by specific clinical findings; Listing 1.04 B refers to spinal **arachnoiditis**, confirmed by an operative note or tissue biopsy, and Listing 1.04C refers to **lumbar spinal**

5

**stenosis** that results in certain findings on diagnostic imaging techniques and certain specified physical limitations.

In order to meet or equal the requirements of a listed impairment, a claimant must demonstrate specific findings that duplicate the enumerated criteria of the listed impairment. This equivalency must be based on medical evidence supported by acceptable clinical and diagnostic techniques. *Land v. Sec'y of Health and Human Svcs.*, 814 F.2d 241, 245 (6th Cir.1986). In order for a claimant's condition to equate with a listed impairment, the claimant's condition must manifest all of the specified medical criteria for such impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) ("An impairment that manifests only some of the criteria, no matter how severe, does not qualify.").

Listing 1.04 provides, in pertinent part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

6

or

B. Spinal arachnoiditis, confirmed by an operative note
or pathology report of tissue biopsy, or by appropriate
medically acceptable imaging, manifested by severe
burning or painful dysesthesia, resulting in the need for
changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in
pseudoclaudication, established by findings on
appropriate medically acceptable imaging, manifested by
chronic nonradicular pain and weakness, and resulting in
inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, supt. P, App. 1 §1.04.

In seeking presumptive disability at Step 3, Plaintff relies upon the opinion
of James Templin, M.D. Dr. Templin, a physician specializing in occupational
medicine and pain management, evaluated Plaintiff on July 11, 2002 following a
work-related injury (Tr. 375-395). In his report, he opined that Plaintiff satisfied
the criteria of Listing 1.04 (Tr. 393-394).

However, Dr. Templin's opinion is at odds with the other credible medical
evidence of record. For example, in his December 2002 assessment Mark Burns,
M.D. found no evidence of trauma or injury (Tr. 419-430). To the contrary, his
impression was that of a normal lumbosacral spine with disc spaces at normal

7

limits (Tr. 419-430). He further found that Plaintiff retained a normal range of motion and could sit, stand, move about, lift, carry and handle objects without limit (Tr. 421-423).

Dr. Burn's essentially normal findings are consistent with the assessment of orthopedic surgeon Timothy Wagner, M.D. Dr. Wagner evaluated Plaintiff from the vantage point of her February 2001 work-related injury. He opined that the examination of her lower back was essentially normal with the exception of decreased sensation in her left leg and thigh(Tr. 416).

The findings of Dr. Wagner, as well as Dr,. Burns, are consistent with the February 14, 2004 MRI of the lumbosacral spine which showed no evidence of disc herniation or spinal stenosis (Tr. 481).

Indeed, Dr. Templin's report is the only medical evidence of record which would support at finding of disability under Listing 1.04. An ALJ's decision is not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). The inquiry for this for this Court is whether substantial evidence supports the ALJ's decision. The Court finds that with respect to his determination that Plaintiff did not satisfy the criteria of Listing 1.04, substantial

8

evidence supports the same.

Plaintiff's second claim of error is that the ALJ improperly evaluated her mental impairment.   Specifically, she contends that the ALJ improperly rejected the opinions of Dr. Templin and Christopher Allen, Ph.D., both of whom assessed greater mental limitation than that in the RFC.

In formulating the RFC, the ALJ limited Plaintiff to a low stress environment, requiring that she follow simple instructions, doing repetitive 1-2 step work operations (Tr. 35).

Whereas Dr. Templin concluded that Plaintiff lacked the ability to complete a workday or workweek due to her mental impairment (Tr. 391-392).  He stated that her ability to carry out detailed instructions, maintain attention and concentration for extended periods and perform at a consistent pace was "poor" (Tr. 391-392).   He did, however, credit Plaintiff with a "fair" ability to understand and remember detailed instructions, perform activities within a schedule, maintain attendance, be punctual, get along with co-workers and peers and respond appropriately to changes in the work setting (Tr. 391-392).

The ALJ discounted this opinion because Dr. Templin not a mental health professional, without the qualifications to render a diagnosis in this regard.   As Dr. Templin was acting outside the scope of his expertise, the ALJ properly

9

rejected Dr. Templin's opinion.  *See e.g., Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001)("Although Dr. Bielefeld did opine that Buxton could not maintain employment  that opinion was based on Buxton's underlying *physical* conditions, which Dr. Bielefeld, as a psychologist, was not qualified to diagnose.")

As for Dr. Allens assessment of a GAF score of 54, it, in and of itself, is not dispositive of an inability to perform work related activity.

"Even assuming GAF scores are determinative, the record supports a GAF in the high 40s to mid 50s, which would not preclude her from having the mental capacity to hold at least some jobs in the national economy."  *Smith v. Commissioner*, 482 F.3d 873, 877 (6th Cir. 2007).

Nor did Dr. Allen indicate whether Plaintiff's mental impairments precluded him from returning to work (Tr. 408).

Significantly, in his evaluation, Dr. Allen noted that much of his assessment was gleaned from Plaintiff's "self-report", thereby detracting from the credibility of his opinion (Tr. 33).

Based upon the foregoing, the Court finds that Dr. Allen's evaluation lacks objectivity and was, thus, properly rejected by the ALJ.

Finally, the lack of any past history of mental disorder or treatment for the same belies Plaintiff's contention of disabling mental impairment.

### III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment be OVERRULED and the Defendant's Motion for Summary Judgment be SUSTAINED. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This _5_ day of January, 2009.

_____
Henry R. Wilhoit, Jr., Senior Judge